UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **GINA MAREA PHILLIPS,** | } |
| Plaintiff, | } |
| v. | } Case No.: 6:14-CV-966-RDP |
| **JIM BROWN, et al.,** | } |
| Defendants. | } |

## MEMORANDUM OPINION

This matter is before the court on Defendants' Motion for Summary Judgment. (Doc. # 29). The Motion has been fully briefed. (Docs. # 30, 31 and 32).

The court initially notes that the Motion is filed by Defendants James Browne, John Mark Tirey, and James Painter. (Doc. # 29). In her Opposition to the Motion, Plaintiff has indicated that her claims against Defendants Tyree and Painter are due to be dismissed. (Doc. # 31). Therefore, Defendants Tyree and Painter are entitled to summary judgment, and the court limits its analysis to Plaintiff's claim against Browne.

### I.      Summary of Relevant Facts

If facts are in dispute, they are stated in the manner most favorable to the non-movant (Phillips), and all reasonable doubts about the facts have been resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Browne. v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994).

On April 16, 2012, Walker County Deputy Sheriff James Browne was on duty in a marked patrol car when he received a call from dispatch to go to 274 Sunlight Road, Jasper, Alabama on a report of death threats made by Plaintiff Gina Phillips. (Doc. # 30-1, ¶¶ 1-3; Doc. # 30-2). The dispatcher informed Browne that Phillips had threatened via phone and text message to kill people at the Sunlight Road residence, she was under the influence of drugs and alcohol, and she was driving a silver BMW heading to the Sunlight Road residence. (Doc. # 30-1, ¶ 4; Doc. # 30-2). The dispatcher also informed Browne that Phillips's mother reported that Phillips had sent her a text message stating that she was going to shoot her father and had a hit list of other people she intended to kill. (Doc. # 30-1, ¶ 5; Doc. # 30-2).

Upon arriving at Sunlight Road, Browne spotted Phillips. (Doc. # 30-1, ¶ 6). Phillips is approximately five feet, two inches tall, and weighs about ninety-eight pounds. She had on fitted shorts, a fitted tank top shirt and a brassiere. Phillips' keys were in her car. Phillips claims that because her clothes fit snugly, it was obvious there was nowhere for her to hide a weapon. There was nothing between Phillips and Browne to obstruct his view. (Doc. # 31-1, ¶¶ 1, 5-6).

Browne, who is approximately six feet, two inches tall and weighs approximately two hundred pounds, ordered Phillips to approach and place her hands on the hood of his patrol car. (Doc. # 30-1, ¶ 7). Upon being directed to approach him and place her hands on the hood of his patrol car one time, Phillips stopped walking towards the home, turned to face Browne, making sure that her open, empty hands were in plain view, and asked him "why." Phillips's hands were out to her sides, open and empty and she was approximately 15 feet from Browne. (Doc. # 31-1, ¶¶ 5-6). At that point, Browne deployed his Taser at Phillips. (Doc. # 30-1, ¶ 18).

The Taser prongs hit Phillips in the chest and she fell face-forward into the ground. (Doc. # 30-1, ¶ 20). Browne ordered Phillips to put her hands behind her back. (Doc. # 30-1, ¶ 21).

Phillips claims the Taser blast temporarily paralyzed her, and caused intense pain throughout her body. Because of the paralyzing effects of the Taser, Phillips could not move her arms behind her back. (Doc. # 31-1, ¶ 8). While she was on the ground, Browne shocked Phillips with the Taser again. (Doc. # 30-1, ¶¶ 21-24). Browne grabbed Phillips's head by her hair, forcefully shoved her face into the gravel driveway, and told her "lucky I didn't shoot your ass." Brown then handcuffed Phillips's hands. (Doc. # 31-1, ¶ 9).

Browne pulled Phillips from the ground by the handcuffs, walked her to his police car, and shoved her into the back seat, forcing her to sit and pull down on the wires connected to the Taser prongs buried in her chest. One of the prongs came out and Phillips was bleeding from the cut made by the barb of the prong. (Doc. # 31-1, ¶ 9). Phillips told Browne that she was bleeding from the hole in her from the Taser, was still hurting badly, she was a nurse, and she needed to go to the emergency room.[1] (Doc. # 31-1, ¶ 10). Browne told Phillips that the only place that she was going was to jail because he was charging her with interfering with a governmental operation and resisting arrest. (Doc. # 31-1, ¶ 10).

Browne then called in on his radio and reported that he had made contact with the female suspect, that she left running and didn't obey his command, so he had used his Taser on her. He further reported that he had her in custody in the back seat of his patrol unit. (Doc. # 31-1, ¶ 10).

Phillips appeared to be intoxicated or under the influence of drugs. (Doc. # 30-1, ¶ 34). A search of Phillips' vehicle revealed no weapons, but numerous prescription drugs were uncovered. (Doc. # 30-1, ¶ 37). A review of Phillips' text messages confirmed the existence of the death threats. (Doc. # 30-1, ¶ 38).

---

[1] Browne has stated in his affidavit that he did not recall Phillips receiving any injuries. (Doc. # 30-1, ¶ 30). Phillips may have received some minor scrapes or bruising from her fall, but she did not appear to Browne to have any injury that required medical treatment. (Doc. # 30-1, ¶ 31).

Phillips was transported to the Walker County Jail and released the following day – on April 17, 2012. (Doc. # 30-3).

On September, 11, 2012, Browne testified at Phillips's hearing. (Doc. # 30-1, ¶ 39). Browne testified that he had shocked Phillips with the Taser in the back as she walked away from him. Phillips claimed Browne had deployed the Taser at Phillips and hit her squarely in the chest above her sternum as she walked towards him. (Doc. # 31-1, ¶ 3). Judge Lapkovitch, Walker County District Court Judge, found that Phillips had not committed any crime and found her not guilty on each charge brought against her. (Doc. # 31-1, ¶ 12).

After the hearing, Browne was waiting for Phillips in the hallway. Brown walked up to Phillips, put his hand on her shoulder to stop her, and told her that "you are under arrest and in my custody now." (Doc. # 31, ¶ 14). Browne directed Phillips to sit on the bench in the hallway and called over his radio for an officer to come and pick Phillips up and take her to jail. (Doc. # 31-1, ¶ 14). District Attorney Bill Adair came and spoke with Browne. After talking to the District Attorney, Browne told Phillips she was "free to leave for now." (Doc. # 31-1, ¶¶ 14-15).

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the Rule requires the non-moving party

to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *See id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc*. teaches, Rule 56(c) "does not allow the plaintiff to simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof of trial, he must come forward with at least some evidence to support each element essential to his case at trial." *Anderson*, 477 U.S. at 252. "Mere allegations" made by a plaintiff are insufficient. *Id.*

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co*., 243 F. Supp.2d 1257, 1262 (D.Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so onesided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp.2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp.2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear … that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III. Analysis

Plaintiff's First Amended Complaint asserts four claims under 42 U.S.C. § 1983 against Browne: Count I – unlawful seizure arising from Plaintiff's arrest and subsequent detention, (Doc # 15, pp. 10-11); Count II – excessive force used in effecting Plaintiff's arrest, (Doc # 15, pp. 11-13); Count III – denial of medical treatment, (Doc # 15, pp. 13-14); and Count IV – unlawful seizure arising from a subsequent encounter between Plaintiff and Browne.

#### A. Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (internal quotation marks omitted). "An official asserting the affirmative defense of qualified immunity must initially establish that he was acting within his discretionary authority." *Skop v. City of Atlanta, Georgia*, 485 F.3d 1130, 1136 (11th Cir. 2007). "If the official was acting within the scope of his discretionary authority ... the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Id*. at 1136-37.  Here, Plaintiff has not challenged the assertion that Browne was at all times acting within the scope of his discretionary authority.  Moreover, arrests by police officers fall within the

discretionary authority function. *See, e.g. Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) ("there can be no doubt that [the officer] was acting in his discretionary authority when he arrested [the plaintiff].")

Therefore, "[t]o overcome qualified immunity, [a] plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). "The threshold inquiry" a court must consider in a qualified immunity analysis is whether Plaintiff has alleged a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

### B.     Count I – Unlawful Seizure

Plaintiff alleges that Browne violated her constitutional rights by arresting her on April 16, 2012.  That argument is based on her claim that Browne lacked probable cause to arrest her. (Doc. # 31 at 13).

A warrantless arrest carried out without probable cause violates the Constitution and can give rise to a claim under Section 1983.  However, probable cause is an absolute bar to a false arrest claim.  *See Rankin v. Evans*, 133 F .3d 1425, 1435 (11th Cir. 1998).  "[I]n cases involving arrests or warrantless searches and seizures, law enforcement officers are entitled to qualified immunity if they had even arguable probable cause." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest." *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010)

(citation omitted). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (internal quotation marks omitted).

Importantly, all that is required for an officer to make an arrest based upon probable cause is that the arrest be for *some* crime. Neither Alabama, nor the Eleventh Circuit, has adopted a rule requiring the facts and circumstances giving rise to probable cause to be closely related to the charge stated by the police officer. *See United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973) ("When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest."); *Hill v. State*, 665 So.2d 1024 (Ala.Cr.App. 1995) ("If [the officer's] observation of [the arrestee's] conduct was sufficient to supply [the officer] probable cause to arrest [the arrestee] for any chargeable offense, then the probable cause element is qualified"); *Powell v. State*, 548 So.2d 590, 600 (Ala.Cr.App. 1988) (holding that an officer had probable cause to arrest the plaintiff even though he did not have probable cause to arrest him for the charge stated at the time of the arrest); *see also Burdeshaw v. Snell*, 365 F. Supp. 2d 1194, 1201 (M.D. Ala. 2005).

As Browne correctly points out, based on the death threats attributed to her by third parties and reported by the police dispatcher, Plaintiff could have been charged with making a terrorist threat. "A person commits the crime of making a terrorist threat when he or she threatens by any means to commit any crime of violence . . . [i]ntentionally or recklessly . . . [t]errorizing another person." Ala. Code § 13A-10-15. Here, it is undisputed that Browne received information indicating Plaintiff had made threats. It is also undisputed that he was directed to the Sunlight Road residence and responded to that call. Plaintiff has not disputed that

she made death threats to people living at the Sunlight Road residence, and, in any event, her text messages subsequently confirmed the existence of the death threats. (Doc. # 30-1 ¶ 38). Therefore, at a minimum, Browne had arguable probable cause to arrest Plaintiff and there was no constitutional violation in connection with that arrest.

### C.  Count II – Excessive Force

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Jean–Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (internal quotes omitted). However, "[a]ny use of force must be reasonable," *id*., and "[i]t is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir.2006). The question presented here is whether, on April 16, 2012, it was clearly established that the amount of force used by Browne against Plaintiff was unconstitutionally excessive.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. *Id.* (citation and internal quotation marks omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* Therefore, "[u]se of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (citation and internal quotation marks omitted).

"In the Eleventh Circuit, [courts] recognize that the typical arrest involves some force and injury." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). For even minor

offenses, police officers are authorized to use physical restraint, handcuffs, and to push suspects. *See, e.g., Nolin*, 207 F.3d at 1257 (finding no constitutional violation to grab suspect, push him against a van, search his groin in an uncomfortable manner, and place him in handcuffs); *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (per curiam) (finding no constitutional violation to slam plaintiff against wall, kick plaintiff's legs apart, and require plaintiff to raise arms above his head); *Gold v. City of Miami*, 121 F.3d 1442, 1446-47 (11th Cir. 1997) (per curiam) (finding no constitutional violation for affixing handcuffs too tightly on disorderly conduct arrestee); *Post v. City of Fort Lauderdale, Fla.*, 7 F.3d 1552, 1559-60 (11th Cir. 1993) (finding no excessive force when a non-resisting individual was arrested for building code violation and pushed against a wall, put in a chokehold, and handcuffed).

In this case, according to Plaintiff's version of the facts, which the court must accept as true,[2] when Brown discharged his Taser at Plaintiff, she was facing Browne, her hands were to her sides, open and empty, and she was approximately 15 feet from Browne. (Doc. # 31-1 ¶¶ 5-6). According to Plaintiff's sworn affidavit testimony, she obeyed Browne's commands, was unarmed, and was not resisting arrest.

Eleventh Circuit precedent establishes that shocking a non-threatening, unresisting suspect with a Taser is unconstitutionally excessive. In an unpublished decision in *Thompson v. Mostert*, 489 F. Appx. 396 (11th Cir. 2012), the court addressed a fact scenario similar to that presented here. In *Thompson,* the plaintiff testified that during an arrest he did not resist being handcuffed, but the officers proceeded to force him to the ground and deployed a Taser device into his back. *Thompson*, 489 F. Appx. at 397-98. Under these facts, the Eleventh Circuit held a

---

[2] The court must accept as true Plaintiff's testimony at this stage in the proceedings. *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012),

reasonable jury could find that the officers violated Thompson's clearly established constitutional rights. *Id.*

In *Oliver v. Fiorino*, 586 F.3d 898 (11th Cir.2009), the plaintiff was repeatedly shocked by a Taser over a two-minute period. Before the Taser was deployed, however, the plaintiff was not advancing toward the officer, and the officer shocked the plaintiff with the Taser without warning. *Oliver*, 586 F.3d at 904. The Eleventh Circuit held that the officer's conduct was so plainly unnecessary and disproportionate that no reasonable officer could have thought that this amount of force was legal under the circumstances. *Id.*[3]

Here, viewing the facts in the light most favorable to Plaintiff, not only did Browne shock Plaintiff with the Taser without warning and while she was in a non-threatening and non-aggressive posture, he also shocked her a second time, while she was lying face-down on the ground with one had cuffed behind her back. Under these circumstances, the court concludes that Plaintiff's assertions regarding both the first and the second discharge of the Taser are enough to put the question to a jury. That is, her allegations, if believed, support a claim of excessive force that violated her clearly established rights. *See also Runge v. Snow,* 514 Fed. Appx. 891 (11th Cir. Mar.27, 2013) (holding the gratuitous use of force when a criminal suspect is detained and not resisting arrest constitutes excessive force); *Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) (allowing excessive force claim against police officers where defendant was beaten and sprayed with pepper spray while lying face down on the ground, posed no danger of immediate harm to anyone, and was not actively resisting arrest).

---

[3] Similarly, in *Cherry v. City of St. Petersburg*, 813 F. Supp. 2d 1351 (M.D. Fla. 2011), the district court held that the discharge of a Taser at a plaintiff who was in a nonaggressive, nonthreatening posture a distance of one foot from the officer was disproportionate to, and excessive under, the circumstances. *Id*. at 1355.

### D. Count III – Denial of Medical Treatment

Plaintiff also contends that Browne was deliberately indifferent to her serious medical needs in violation of section 1983. The Eighth Amendment prohibits cruel and unusual punishment, which includes deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Claims of deliberate indifference to serious medical needs arise under the Eighth Amendment when the claimant is a convicted prisoner. However, when a Section 1983 Plaintiff is a pre-trial detainee, the claim must be asserted under the Fourteenth Amendment. *Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013). In any event, the minimum standard for providing medical care to a pretrial detainee is identical to the minimum standard required by the Eighth Amendment for a convicted prisoner, and courts analyze the claim under the decisional law of both amendments. *Id*.

"Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference." *Adams v. Poag*, 61 F.3d 1537, 1543-44 (11th Cir. 1995) (citing *Carswell v. Bay Cnty.*, 854 F.2d 454, 457 (11th Cir. 1988); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). However, not every claim of inadequate medical treatment states a cognizable claim under the federal constitution. *Id*. "Medical treatment [is deliberately indifferent] only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted) (Eighth Amendment case).

To establish that Browne was deliberately indifferent to her serious medical need, Plaintiff must satisfy both an objective and subjective test. Under the objective component of the test, Plaintiff must show that she had a serious medical need. *Goebert v. Lee Cnty.*, 510 F.3d

1312, 1326 (11th Cir. 2007). An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted).

To establish the subjective component, a prisoner must establish three factors: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) that the conduct complained of is more than merely negligent. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Additionally, the plaintiff must show that an injury was caused by the defendant's wrongful conduct. *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). It is not enough to show that the care provided was less than optimal, or that a different course of treatment might have been preferable. The required subjective elements of a deliberate indifference claim ensure that "mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" are not actionable under Section 1983. *Taylor*, 221 F.3d at 1258.

Plaintiff asserts that she was bleeding from a cut inflicted by the barbs of the Taser. Plaintiff also states she told Browne that she is a nurse and needed medical attention. However, as to Plaintiff's burden on the objective component of her deliberate indifference claim, there is no evidence of a medical diagnosis to the effect that her cut required medical attention, nor does the evidence establish that it would have been obvious to a lay person that her bleeding cut required medical attention. Plaintiff has not met the objective component of the deliberate indifference test.

But even if the facts showed Plaintiff had an objectively serious medical need (and, to be clear, they do not), she must also show that Browne subjectively perceived a serious medical

n/a
n/a

need to which he was indifferent.  Here, Plaintiff has failed to meet that burden, as well.  That is, no evidence has been presented that Browne had any subjective knowledge that Plaintiff needed medical attention.  Browne stated in his affidavit that he did not recall Phillips receiving any injuries. (Doc. # 30-1 ¶ 30).  To be sure, Phillips may have received a cut when she was tased and may have been bruised by her fall.  But the record facts do not suggest that she appeared to Browne to have any injury that required medical treatment. (Doc. # 30-1 ¶ 31).  Even taking as true Plaintiff's assertion that she told Browne she is a nurse and required medical treatment, she has not met her burden.

"Each individual Defendant must be judged separately and on the basis of what that person knows." *Burnette*, 533 F.3d at 1331.  Plaintiff has not presented evidence that Browne (1) had subjective knowledge of a risk of serious harm to Plaintiff, and (2) disregarded that risk. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).  Plaintiff has not shown that Browne was subjectively aware that Plaintiff had a serious medical need that medical attention.

Summary judgment is appropriate on Plaintiff's deliberate indifference claim here because the undisputed evidence does not show deliberate indifference by Browne to either an objectively serious medical need that he subjectively perceived.

E.   **Count IV – Unlawful Seizure**

Plaintiff asserts another unlawful seizure claim based on Browne's instruction to her, after the hearing in which the charges against her were dismissed, that she was under arrest and should wait on the bench in the hallway outside the courtroom. (Doc. # 31-1- at ¶ 14).

"A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, ... in some way restrained the liberty of a citizen.'" *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)). Three types of encounters between police and citizens implicate the Fourth Amendment: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests.... [A]n encounter that does not involve coercion or detention does not implicate Fourth Amendment scrutiny." *Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006) (quoting *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006)) (internal quotation marks omitted).

A show of authority can constitute a seizure if the subject yields to that authority. *California v. Hodari D.*, 499 U.S. 621, 625–26 (1991). "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *West v. Davis*, 767 F.3d 1063 (11th Cir. 2014) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (internal modifications omitted)). "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." *Miller*, 458 F.3d at 1257 (quoting *Perez*, 443 F.3d at 777–78 (emphasis omitted)). "Absent the use of physical force, a seizure requires both a show of authority and 'submission to [that] assertion of authority.'" *United States v. Dolomon,* 569 Fed.Appx. 889 (11th Cir. 2014) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). But "[t]he Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni–Ponce*, 422 U.S. 873, 878 (1975).

Although the "seizure" at the courthouse involved no physical restraint and lasted only a short period of time, a reasonable jury could conclude that Browne used a show of authority such

15

that Plaintiff, in light of her prior dealings with Browne, would have understood that she had been arrested and may not have felt free to leave. Therefore, just as with her other lawful seizure claim (asserted in Count I), the question becomes whether Browne had arguable probable cause to detain Plaintiff. Arguable probable cause is evaluated by determining whether a reasonable officer, possessing the same knowledge as the arresting officer at the time of the arrest, would have believed probable cause to exist. *See Lee*, 284 F.3d at 1195.

It is undisputed that Plaintiff and Browne had just been present at a hearing on the charges against Plaintiff. The judge had dismissed those charges. According to Plaintiff, Browne was present to hear the judge announce that Plaintiff was not guilty of the charges. Thereafter, she was allowed to leave the courtroom. Browne claims that he saw Plaintiff in the hall, asked her to wait, and then spoke with the district attorney. After confirming there were no other charges or warrants against her, he then told her she could leave. (Doc. # 30-1, ¶¶ 40-42). The problem for Browne here is that when facts are in dispute, the court must accept Plaintiff's version of those facts in resolving his motion. According to Plaintiff, Browne detained her and told Plaintiff she was arrested. He did not investigate whether there was any probable cause to arrest her until *after* he detained her. Under these circumstances, a reasonable jury could conclude that the detention outside the courtroom, however brief, violated Plaintiff's clearly established constitutional rights.

## IV.    Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. # 29) is due to be granted in part and denied in part. A separate order will be entered.

**DONE** and **ORDERED** this March 9, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE